UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RYAN SEAGER, individually and on behalf of all other similarly situated persons, | ) ) ) ) JURY DEMANDED |
| Plaintiff | ) |
| v. | ) ) Case No. ) |
| VOLKSWAGEN AG, and VOLKSWAGEN GROUP OF AMERICA, INC., | ) ) ) ) |
| Defendants | ) |

## CLASS ACTION COMPLAINT

Plaintiff, Ryan Seager, through his counsel, individually and on behalf of all other similarly situated persons, states as his Complaint against Defendants, as follows:

## NATURE OF CLAIM

1. A Certificate of Conformity is the document that the Environmental Protection Agency ("EPA") issues to a vehicle manufacturer to certify that a class of motor vehicles introduced into commerce in the U.S. conforms to the EPA's requirements. Every class of motor vehicle introduced into commerce in the U.S. must have a Certificate of Conformity (hereafter "Certificate"). Certificates are valid for only one model year of production.

2. This action concerns Defendants' model year 2009 through 2015 diesel light-duty vehicles equipped with 2.0 liter engines (the "illegal vehicles"). All of these purportedly "Certified" vehicles are illegal, because Defendants fraudulently obtained Certificates for them by equipping them with an illegal device described herein. Moreover,

Defendants' marketing of the illegal vehicles to U.S. consumers was fraudulent, because it was based on:

(a) Defendants' misleading half-truth/misrepresentation -- that the vehicles were Certified -- when in fact the Certificates for each model year were obtained through Defendants' fraud on the EPA;

(b) Defendants' fraudulent concealment of the material fact that the vehicles' Certificates were obtained only because the vehicles were equipped with a so-called "defeat device;" and

(c) The U.S. consuming public's reasonable reliance on the apparent fact that the vehicles were legal at the time of purchase/lease -- *i.e.*, no one would have knowingly purchased or leased an illegal vehicle.

3. Plaintiff and the putative class he seeks to represent did not know (and had no reason to know) at the time of their transactions that the vehicles are illegal, because Defendants were in a position of superiority over them with respect to the manner in which the Certificates were obtained. Specifically, Defendants were in a superior position because only Defendants knew that the vehicles were equipped with a "defeat device" -- an illegal device which enabled the vehicles to meet the EPA's requirements (and the more stringent requirements of certain states). As a result of this secret defeat device, Defendants' representations regarding the illegal vehicles' pollution emissions and fuel efficiency were materially false. (See Exhibit 1, explaining how the defeat devices defrauded the EPA.)

4. The above referenced "illegal vehicles" were equipped with 2.0 liter diesel engines for the following model years, makes and models:

| Model Year | EPA Test Group | Make and Model(s) |
|---|---|---|
| 2009 | 9VWXV02.035N | VW Jetta, VW Jetta Sportwagen |
| 2009 | 9VWXV02.0U5N | VW Jetta, VW Jetta Sportwagen |
| 2010 | AVWXV02.0U5N | VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2011 | BVWXV02.0U5N | VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2012 | CVWXV02.0U5N | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2012 | CVWXV02.0U4S | VW Passat |
| 2013 | DVWXV02.0U5N | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2013 | DVWXV02.0U4S | VW Passat |
| 2014 | EVWXV02.0U5N | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2014 | EVWXV02.0U4S | VW Passat |
| 2015 | FVGAV02.0VAL | VW Beetle, VW Beetle Convertible, VW Golf, VW Golf Sportwagen, VW Jetta, VW Passat, Audi A3 |

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action under 28 U.S.C. § 1332 (a) and (d), because the amount in controversy for the Class exceeds $5,000,000 and Plaintiff and other putative class members are citizens of a different state than Defendants.

6. This Court has personal jurisdiction over Defendants, and venue is appropriate here, because Defendants have conducted and continue to conduct substantial business in this District, and because through their marketing of the illegal vehicles, they committed the above referenced fraudulent misrepresentations and concealments in this District.

## PARTIES

7. Plaintiff, Ryan Seager, is a citizen of Illinois, residing in DuPage County. He owns an illegal vehicle -- specifically, a 2014 Passat TDI -- which he purchased in April 2014 from Fox Valley Volkswagen.

8. Defendant Volkswagen AG (a/k/a Volkswagen Aktiengesellschaft) is a German corporation, with its principal place of business in Wolfsburg Germany, and is the parent corporation of Defendant Volkswagen Group of America, Inc.

9. Defendant Volkswagen Group of America, Inc. is a New Jersey corporation, with its principal place of business in Herndon, Virginia.

10. Based on information and belief, at all relevant times each Defendant acted as the agent of the other with respect to: (a) equipping the illegal vehicles with a secret defeat device; (b) obtaining Certificates for the illegal vehicles without disclosing the defeat device; and (c) marketing the illegal vehicles as being EPA-compliant, without disclosing that the vehicles' Certificates were obtained only because of the defeat device.

## **THE SEPTEMBER 2015 REVELATION OF DEFENDANTS' FRAUD**

11. As previously explained, Defendants' (apparent) ability to meet the EPA's requirements for the illegal vehicles was dependent on Defendants' use of a secret defeat device. Similarly, in states which have stricter emissions standards than those imposed by the EPA, Defendants' (apparent) ability to meet those standards was dependent on their use of the same illegal defeat device.

12. In September 2015, Defendants admitted that they had designed and installed a defeat device in the form of a sophisticated software algorithm that detected when a vehicle was undergoing emissions testing. Upon such detection, the device

4

caused the illegal vehicles to activate certain emission control systems that were inactive during normal/non-testing operation.

## TOLLING OF THE STATUTE OF LIMITATIONS

13. Any applicable statute of limitations has been tolled by Defendants' active concealment of the facts alleged herein. Plaintiffs and the proposed class members could not have discovered the illegal nature of their vehicles until shortly before this action was filed.

## CLASS ACTION ALLEGATIONS

14. Plaintiff brings this action as a class action pursuant to FRCP 23(a) and (b)(3) on behalf of the following class:

> All persons or entities in the U.S. who purchased or leased a model year 2009-2015 Volkswagen or Audi diesel light-duty vehicle equipped with a 2.0 liter engine ("the Class").

15. Excluded from the Class are Defendants and their employees, legal representatives, subsidiaries and assigns. Also excluded from the Class are governmental entities, judicial officers and their families and staffs.

16. The members of the Class are so numerous that their individual joinder is impractical. Plaintiff is informed and believes that approximately 500,000 illegal vehicles (see ¶ 4) were sold in the U.S., and that Class members can be identified through Defendants' business records and the media.

17. Plaintiff's claim is typical of the Class members' claims, in that all such claims arose from Defendants' misrepresentation that the illegal vehicles are EPA-compliant, and Defendants' concealment that the vehicles' Certificates were obtained

through a defeat device.  Plaintiff can prove the elements of his claim using the same evidence that would be used to prove the elements of Class members' claims.

18. Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff has retained counsel with substantial experience in complex litigation and class action litigation.  Neither Plaintiff nor his counsel have interests adverse to the Class.

19. There are numerous questions of law and fact common to the Class, including but not limited to the following:

> (a) Whether the illegal vehicles (see ¶ 4) were equipped with a defeat device which allowed the vehicles to become Certified;
>
> (b) Whether Defendants concealed the defeat device from the EPA, state regulators and the U.S. consuming public (including the Class);
>
> (c) Whether Defendants misrepresented the illegal vehicles to be EPA-compliant (*i.e.*, legal);
>
> (d) Whether Defendants placed the illegal vehicles into the stream of commerce in the U.S.;
>
> (e) Whether the Class justifiably relied on the apparent legality of those vehicles;
>
> (f) Whether the Class has been harmed by the public disclosure that their vehicles are illegal and in need of a fix to make them legal; and

(g) Whether following a potential fix, the Class will still be harmed by a reduction in their vehicles' fuel efficiency, performance and/or resale value.

20. The above common questions predominate over any questions affecting only individual Class members. Moreover, a class action is superior to other available methods for adjudicating the claim, because the class action device presents far fewer management difficulties; allows the hearing of claims which might otherwise go unaddressed; and provides the benefits of single adjudication, economies of scope and comprehensive supervision by a single court.

## COUNT I
## COMMON LAW FRAUDULENT MISREPRESENTATION/HALF-TRUTH
## (Nationwide Class)

21. Plaintiff realleges and incorporates paragraphs 1-20.

22. It is well established that a representation which is technically true may nevertheless be fraudulent, where it omits facts which materially qualify the representation as made. Stated another way, where one chooses to speak, he cannot omit facts which materially qualify the facts as stated. In sum, the telling of a half-truth calculated to deceive is fraud.

23. Here, for their model year 2009-2015 diesel light-duty vehicles equipped with 2.0 liter engines, Defendants told the following half-truth calculated to deceive the U.S. consuming public -- that these classes of Volkswagen and Audi vehicles were EPA Certified. This representation, although technically true, was a material misrepresentation because Defendants intentionally omitted disclosure that the Certificates were obtained only because the vehicles were equipped with a defeat device.

24. Defendants told this half-truth in at least the following four ways:

(a) By introducing these vehicles into commerce in the U.S., Defendants represented that the vehicles were EPA Certified (*i.e.,* legal), because only Certified vehicles can be legally introduced into commerce in the U.S.;

(b) By affixing an EPA-approved fuel economy and environment label (with the EPA logo) to the exterior of each vehicle (see sample label from the EPA's website attached as Exhibit 2), Defendants represented that each vehicle was EPA Certified;

(c) By affixing an EPA-approved sticker under the hood of each vehicle, Defendants represented that each vehicle was EPA Certified; and

(d) By stating in each owner's manual that each vehicle conformed with the federal Clean Air Act, Defendants represented that each vehicle was EPA Certified.

25. Plaintiff and the Class justifiably relied on Defendants' misrepresentation when purchasing or leasing their illegal vehicles. Stated another way, Plaintiff and the Class relied on the apparent legality of the vehicles, and they would not have purchased or leased the vehicles if they had known that the vehicles are illegal.

26. As a proximate result of Defendants' misrepresentation, Plaintiff and the Class have been damaged because they possess vehicles which are not EPA-compliant, and which require a fix just to become legal. Moreover, even if/when a fix is applied to their vehicles, Plaintiff and the Class will still be damaged because the fuel efficiency, performance and resale value of their vehicles will have decreased.

WHEREFORE, Plaintiff respectfully request this Court to grant him the following relief:

A. Certify this action as a Class action under FRCP 23(b)(3);

B. Certify the Class defined in ¶ 15, and appoint Plaintiff's counsel as Class counsel;

C. Enter judgement against Defendants jointly and severally, and award Plaintiff compensatory damages in an amount supported by the evidence; and

D. Award punitive damages in an amount to deter such fraudulent conduct in the future.

## COUNT II
## COMMON LAW FRAUD BY CONCEALMENT
### (National Class)

27. Plaintiff realleges and incorporates paragraphs 1-20.

28. In order to state a claim for fraud by concealment, a plaintiff must allege that the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff. A duty to disclose material facts arises where the defendant is in a position of influence and superiority over plaintiff, and such superiority may arise by reason of experience.

29. Here, Defendants were in a position of influence and superiority over Plaintiff and the Class by reason of Defendants' vastly superior experience regarding the process by which the illegal vehicles obtained Certificates -- *i.e.*, the process by which the vehicles gained apparent legality. Only Defendants knew that the vehicles were equipped with an illegal defeat device which enabled the vehicles to meet the EPA's requirements (and certain states' stricter requirements).

9

30. Defendants breached their duty to disclose by intentionally concealing the material fact that the vehicles' Certificates were obtained only because the vehicles were equipped with a defeat device.

31. At the time of their transactions, Plaintiff and the Class did not know (and had no reason to know) that their vehicles were equipped with defeat devices that made their vehicles illegal. Plaintiff and the Class justifiably relied on the apparent legality of their vehicles and would not have knowingly purchased or leased an illegal vehicle.

32. As a proximate result of Defendants' fraud by concealment, Plaintiff and the Class have been damaged because they possess vehicles which are not EPA-compliant, and which require a fix just to become legal. Moreover, even if/when a fix is applied to their vehicles, Plaintiff and the Class will still be damaged because the fuel efficiency, performance and resale value of their vehicles will have decreased.

WHEREFORE, Plaintiff respectfully requests this Court to grant him the following relief:

A. Certify this action as a Class action under FRCP 23(b)(3);

B. Certify the Class defined in ¶ 15, and appoint Plaintiff's counsel as Class counsel;

C. Enter judgement against Defendants jointly and severally, and award Plaintiff compensatory damages in an amount supported by the evidence; and

D. Award punitive damages in an amount to deter such fraudulent conduct in the future.

Dated: October 1, 2015          Respectfully submitted,

                                Ryan Seager

                                By:   /s/ Edward T. Joyce
                                One of his attorneys.

                                Edward T. Joyce
                                Arthur W. Aufmann
                                Tae Kim
                                THE LAW OFFICES OF
                                EDWARD T. JOYCE & ASSOCIATES, P.C.
                                135 South LaSalle Street
                                Suite 2200
                                Chicago, Illinois 60603
                                Telephone:  (312) 641-2600
                                Facsimile:  (312) 641-0360

# EXHIBIT 1



UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
WASHINGTON, D.C. 20460

SEP 1 8 2015

OFFICE OF
ENFORCEMENT AND
COMPLIANCE ASSURANCE

*VIA CERTIFIED MAIL*
*RETURN RECEIPT REQUESTED*

Volkswagen AG
Audi AG
Volkswagen Group of America, Inc.
Thru:

David Geanacopoulos
Executive Vice President Public Affairs and General Counsel
Volkswagen Group of America, Inc.
2200 Ferdinand Porsche Drive
Herndon, VA 20171

Stuart Johnson
General Manager
Engineering and Environmental Office
Volkswagen Group of America, Inc.
3800 Hamlin Road
Auburn Hills, MI 48326

Re:   Notice of Violation

Dear Mr. Geanacopoulos and Mr. Johnson:

The United States Environmental Protection Agency (EPA) has investigated and continues to investigate Volkswagen AG, Audi AG, and Volkswagen Group of America (collectively, VW) for compliance with the Clean Air Act (CAA), 42 U.S.C. §§ 7401–7671q, and its implementing regulations. As detailed in this Notice of Violation (NOV), the EPA has determined that VW manufactured and installed defeat devices in certain model year 2009 through 2015 diesel light-duty vehicles equipped with 2.0 liter engines. These defeat devices bypass, defeat, or render inoperative elements of the vehicles' emission control system that exist to comply with CAA emission standards. Therefore, VW violated section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B). Additionally, the EPA has determined that, due to the existence of the defeat

devices in these vehicles, these vehicles do not conform in all material respects to the vehicle specifications described in the applications for the certificates of conformity that purportedly cover them. Therefore, VW also violated section 203(a)(1) of the CAA, 42 U.S.C. § 7522(a)(1), by selling, offering for sale, introducing into commerce, delivering for introduction into commerce, or importing these vehicles, or for causing any of the foregoing acts.

Law Governing Alleged Violations

This NOV arises under Part A of Title II of the CAA, 42 U.S.C. §§ 7521–7554, and the regulations promulgated thereunder. In creating the CAA, Congress found, in part, that "the increasing use of motor vehicles . . . has resulted in mounting dangers to the public health and welfare." CAA § 101(a)(2), 42 U.S.C. § 7401(a)(2). Congress' purpose in creating the CAA, in part, was "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population," and "to initiate and accelerate a national research and development program to achieve the prevention and control of air pollution." CAA § 101(b)(1)–(2), 42 U.S.C. § 7401(b)(1)–(2). The CAA and the regulations promulgated thereunder aim to protect human health and the environment by reducing emissions of nitrogen oxides (NOx) and other pollutants from mobile sources of air pollution. Nitrogen oxides are a family of highly reactive gases that play a major role in the atmospheric reactions with volatile organic compounds (VOCs) that produce ozone (smog) on hot summer days. Breathing ozone can trigger a variety of health problems including chest pain, coughing, throat irritation, and congestion. Breathing ozone can also worsen bronchitis, emphysema, and asthma. Children are at greatest risk of experiencing negative health impacts from exposure to ozone.

The EPA's allegations here concern light-duty motor vehicles for which 40 C.F.R. Part 86 sets emission standards and test procedures and section 203 of the CAA, 42 U.S.C. § 7522, sets compliance provisions. Light-duty vehicles must satisfy emission standards for certain air pollutants, including NOx. 40 C.F.R. § 86.1811-04. The EPA administers a certification program to ensure that every vehicle introduced into United States commerce satisfies applicable emission standards. Under this program, the EPA issues certificates of conformity (COCs), and thereby approves the introduction of vehicles into United States commerce.

To obtain a COC, a light-duty vehicle manufacturer must submit a COC application to the EPA for each test group of vehicles that it intends to enter into United States commerce. 40 C.F.R. § 86.1843-01. The COC application must include, among other things, a list of all auxiliary emission control devices (AECDs) installed on the vehicles. 40 C.F.R. § 86.1844-01(d)(11). An AECD is "any element of design which senses temperature, vehicle speed, engine RPM, transmission gear, manifold vacuum, or any other parameter for the purpose of activating, modulating, delaying, or deactivating the operation of any part of the emission control system." 40 C.F.R. § 86.1803-01. The COC application must also include "a justification for each AECD, the parameters they sense and control, a detailed justification of each AECD that results in a reduction in effectiveness of the emission control system, and [a] rationale for why it is not a defeat device." 40 C.F.R. § 86.1844-01(d)(11).

A defeat device is an AECD "that reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and

use, unless: (1) Such conditions are substantially included in the Federal emission test procedure; (2) The need for the AECD is justified in terms of protecting the vehicle against damage or accident; (3) The AECD does not go beyond the requirements of engine starting; or (4) The AECD applies only for emergency vehicles . . . ." 40 C.F.R. § 86.1803-01.

Motor vehicles equipped with defeat devices, such as those at issue here, cannot be certified. EPA, *Advisory Circular Number 24: Prohibition on use of Emission Control Defeat Device* (Dec. 11, 1972); *see also* 40 C.F.R. §§ 86-1809-01, 86-1809-10, 86-1809-12. Electronic control systems which may receive inputs from multiple sensors and control multiple actuators that affect the emission control system's performance are AECDs. EPA, *Advisory Circular Number 24-2: Prohibition of Emission Control Defeat Devices – Optional Objective Criteria* (Dec. 6, 1978). "Such elements of design could be control system logic (i.e., computer software), and/or calibrations, and/or hardware items." *Id.*

"Vehicles are covered by a certificate of conformity only if they are in all material respects as described in the manufacturer's application for certification . . . ." 40 C.F.R. § 86.1848-10(c)(6). Similarly, a COC issued by EPA, including those issued to VW, state expressly, "[t]his certificate covers only those new motor vehicles or vehicle engines which conform, in all material respects, to the design specifications" described in the application for that COC. *See also* 40 C.F.R. §§ 86.1844-01 (listing required content for COC applications), 86.1848-01(b) (authorizing the EPA to issue COCs on any terms that are necessary or appropriate to assure that new motor vehicles satisfy the requirements of the CAA and its regulations).

The CAA makes it a violation "for any person to manufacture or sell, or offer to sell, or install, any part or component intended for use with, or as part of, any motor vehicle or motor vehicle engine, where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under this subchapter, and where the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use." CAA § 203(a)(3)(B), 42 U.S.C. § 7522(a)(3)(B); 40 C.F.R. § 86.1854-12(a)(3)(ii). Additionally, manufacturers are prohibited from selling, offering for sale, introducing into commerce, delivering for introduction into commerce, or importing, any new motor vehicle unless that vehicle is covered by an EPA-issued COC. CAA § 203(a)(1), 42 U.S.C. § 7522(a)(1); 40 C.F.R. § 86.1854-12(a)(1). It is also a violation to cause any of the foregoing acts. CAA § 203(a), 42 U.S.C. § 7522(a); 40 C.F.R. § 86-1854-12(a).

Alleged Violations

Each VW vehicle identified by the table below has AECDs that were not described in the application for the COC that purportedly covers the vehicle. Specifically, VW manufactured and installed software in the electronic control module (ECM) of these vehicles that sensed when the vehicle was being tested for compliance with EPA emission standards. For ease of reference, the EPA is calling this the "switch." The "switch" senses whether the vehicle is being tested or not based on various inputs including the position of the steering wheel, vehicle speed, the duration of the engine's operation, and barometric pressure. These inputs precisely track the parameters of the federal test procedure used for emission testing for EPA certification purposes. During EPA

3

emission testing, the vehicles' ECM ran software which produced compliant emission results under an ECM calibration that VW referred to as the "dyno calibration" (referring to the equipment used in emissions testing, called a dynamometer). At all other times during normal vehicle operation, the "switch" was activated and the vehicle ECM software ran a separate "road calibration" which reduced the effectiveness of the emission control system (specifically the selective catalytic reduction or the lean NOx trap). As a result, emissions of NOx increased by a factor of 10 to 40 times above the EPA compliant levels, depending on the type of drive cycle (e.g., city, highway).

The California Air Resources Board (CARB) and the EPA were alerted to emissions problems with these vehicles in May 2014 when the West Virginia University's (WVU) Center for Alternative Fuels, Engines & Emissions published results of a study commissioned by the International Council on Clean Transportation that found significantly higher in-use emissions from two light duty diesel vehicles (a 2012 Jetta and a 2013 Passat). Over the course of the year following the publication of the WVU study, VW continued to assert to CARB and the EPA that the increased emissions from these vehicles could be attributed to various technical issues and unexpected in-use conditions. VW issued a voluntary recall in December 2014 to address the issue. CARB, in coordination with the EPA, conducted follow up testing of these vehicles both in the laboratory and during normal road operation to confirm the efficacy of the recall. When the testing showed only a limited benefit to the recall, CARB broadened the testing to pinpoint the exact technical nature of the vehicles' poor performance, and to investigate why the vehicles' onboard diagnostic system was not detecting the increased emissions. None of the potential technical issues suggested by VW explained the higher test results consistently confirmed during CARB's testing. It became clear that CARB and the EPA would not approve certificates of conformity for VW's 2016 model year diesel vehicles until VW could adequately explain the anomalous emissions and ensure the agencies that the 2016 model year vehicles would not have similar issues. Only then did VW admit it had designed and installed a defeat device in these vehicles in the form of a sophisticated software algorithm that detected when a vehicle was undergoing emissions testing.

VW knew or should have known that its "road calibration" and "switch" together bypass, defeat, or render inoperative elements of the vehicle design related to compliance with the CAA emission standards. This is apparent given the design of these defeat devices. As described above, the software was designed to track the parameters of the federal test procedure and cause emission control systems to underperform when the software determined that the vehicle was not undergoing the federal test procedure.

VW's "road calibration" and "switch" are AECDs[1] that were neither described nor justified in the applicable COC applications, and are illegal defeat devices. Therefore each vehicle identified by the table below does not conform in a material respect to the vehicle specifications described in the COC application. As such, VW violated section 203(a)(1) of the CAA, 42 U.S.C. § 7522(a)(1), each time it sold, offered for sale, introduced into commerce, delivered for introduction into commerce, or imported (or caused any of the foregoing with respect to) one of the hundreds of thousands of new motor vehicles within these test groups. Additionally, VW

---

[1] There may be numerous engine maps associated with VW's "road calibration" that are AECDs, and that may also be defeat devices. For ease of description, the EPA is referring to these maps collectively as the "road calibration."

4

violated section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B), each time it manufactured and installed into these vehicles an ECM equipped with the "switch" and "road calibration."

The vehicles are identified by the table below. All vehicles are equipped with 2.0 liter diesel engines.

| Model Year | EPA Test Group | Make and Model(s) |
|---|---|---|
| 2009 | 9VWXV02.035N | VW Jetta, VW Jetta Sportwagen |
| 2009 | 9VWXV02.0U5N | VW Jetta, VW Jetta Sportwagen |
| 2010 | AVWXV02.0U5N | VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2011 | BVWXV02.0U5N | VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2012 | CVWXV02.0U5N | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2012 | CVWXV02.0U4S | VW Passat |
| 2013 | DVWXV02.0U5N | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2013 | DVWXV02.0U4S | VW Passat |
| 2014 | EVWXV02.0U5N | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2014 | EVWXV02.0U4S | VW Passat |
| 2015 | FVGAV02.0VAL | VW Beetle, VW Beetle Convertible, VW Golf, VW Golf Sportwagen, VW Jetta, VW Passat, Audi A3 |

Enforcement

The EPA's investigation into this matter is continuing. The above table represents specific violations that the EPA believes, at this point, are sufficiently supported by evidence to warrant the allegations in this NOV. The EPA may find additional violations as the investigation continues.

The EPA is authorized to refer this matter to the United States Department of Justice for initiation of appropriate enforcement action. Among other things, persons who violate section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B), are subject to a civil penalty of up to $3,750 for each violation that occurred on or after January 13, 2009;[1] CAA § 205(a), 42 U.S.C. § 7524(a); 40 C.F.R. § 19.4. In addition, any manufacturer who, on or after January 13, 2009, sold, offered for sale, introduced into commerce, delivered for introduction into commerce, imported, or caused any of the foregoing acts with respect to any new motor vehicle that was not covered by an EPA-issued COC is subject, among other things, to a civil penalty of up to $37,500 for each violation.[2] CAA § 205(a), 42 U.S.C. § 7524(a); 40 C.F.R. § 19.4. The EPA may seek, and district courts may order, equitable remedies to further address these alleged violations. CAA § 204(a), 42 U.S.C. § 7523(a).

---

[1] $2,750 for violations occurring prior to January 13, 2009.
[2] $32,500 for violations occurring prior to January 13, 2009.

The EPA is available to discuss this matter with you. Please contact Meetu Kaul, the EPA attorney assigned to this matter, to discuss this NOV. Ms. Kaul can be reached as follows:

>Meetu Kaul
>U.S. EPA, Air Enforcement Division
>1200 Pennsylvania Avenue, NW
>William Jefferson Clinton Federal Building
>Washington, DC 20460
>(202) 564-5472
>kaul.meetu@epa.gov

Sincerely,

Phillip A. Brooks
Director
Air Enforcement Division
Office of Civil Enforcement

Copy:
Todd Sax, California Air Resources Board
Walter Benjamin Fisherow, United States Department of Justice
Stuart Drake, Kirkland & Ellis LLP

EXHIBIT 2

Diesel Vehicle
(Figure IV-4. in Federal Register Notice)

